JACKIE L. McDONALD and JANET G. McDONALD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McDonald v. Commissioner
Docket No. 5379-78.
United States Tax Court
T.C. Memo 1983-197; 1983 Tax Ct. Memo LEXIS 591; 45 T.C.M. (CCH) 1276; T.C.M. (RIA) 83197; April 11, 1983. *591 P, an employee of C, exercised two options to purchase C stock which had been granted to him pursuant to a qualified stock option plan. Such stock was subject to certain restrictions on transferability imposed by Federal securities law. Because of such restrictions, the fair market value of P's stock was less than the fair market value of publicly traded C stock on the date of exercise. Held, for purposes of the minimum tax, the restrictions imposed upon the transferability of P's stock must be considered in determining its fair market value. Gresham v. Commissioner,79 T.C. 322 (1982), on appeal (10th Cir., Jan. 24, 1983), followed. Randall E. Roberts and Ray J. Martin, Jr., for the petitioners. Richard D. Ames and James E. Polk, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $8,497.00 in the petitioners' Federal income tax for 1972. The sole issue for decision is whether certain restrictions on the transferability of common stock received by an employee upon the exercise of a qualified stock option are to be considered in determining the fair market value of the stock for purposes of the minimum tax. All of the facts were stipulated, and those facts are so found. The petitioners, Jackie L. and Janet G. McDonald, husband and wife, were legal residents of Dallas, Tex., at the time they filed their petition in this case. They timely filed their joint Federal income tax return for 1972 with the Internal Revenue Service Center, Austin, Tex. Mr. McDonald will sometimes be referred to as the petitioner. Throughout the period *593 in question, Mr. McDonald was an employee of Centex Corporation (Centex). The common stock of Centex was listed for trading on the New York Stock Exchange (NYSE), and Centex was subject to the financial reporting requirements for corporations whose stock is traded on such exchange. On December 3, 1968, the directors and shareholders of Centex adopted an employee stock option plan which met the qualification requirements of section 422 of the Internal Revenue Code of 1954. [1] Pursuant to such plan, on February 3, 1969, Mr. McDonald executed a qualified stock agreement with Centex and was granted an option to purchase 3,500 shares of Centex common stock at an option price of $19.00 per share. On September 2, 1969, Mr. McDonald executed another stock agreement with Centex and was granted an option to purchase 2,000 additional shares of Centex common stock at an option price of $28.50 per share. During 1971 and 1972, the common stock of Centex split several times. As a result of such stock splits, Mr. McDonald became entitled to purchase four times the number of shares designated in the first and second option agreements at an exercise price of one-fourth of *594 the prices stated in such option agreements. On September 25, 1972, Mr. McDonald exercised a portion of the first option agreement, purchasing 7,000 Centex shares for $33,250.00 ($4.75 per share). On the same date, he also exercised a portion of the second option agreement, purchasing 4,000 additional shares for $28,500.00 ($7.125 per share). On September 25, 1972, Centex common stock was trading on the NYSE at a mean price of $25.75 per share. In connection with the exercise of such options, Mr. McDonald delivered a letter to Centex in which he declared: As set forth in my Qualified Stock Option Agreement, I acknowledge that the shares of such Common stock which will be issued to me pursuant to this exercise of my options have not been registered under the Securities Act of 1933, as amended, in reliance upon my representation that they are received for investment purposes only and not with a view to the distribution, resale or other disposition thereof. I also understand that these securities may not be offered or sold and that no transfer of them *595 will be made by Centex Corporation or its transfer agent unless (i) they are registered under the Securities Act of 1933, as amended, or (ii) there is presented to Centex Corporation an opinion of counsel satisfactory to Centex Corporation to the effect that such registration is not necessary, and that a legend to this effect will be placed upon the certificates representing these shares. The share certificates received by Mr. McDonald bore a legend in accordance with such agreement and indicated that the transferability of such shares was restricted. The stock received by Mr. McDonald pursuant to his exercise of the qualified stock option agreements of February 3, 1969, and September 2, 1969, was not registered with the Securities and Exchange Commission (SEC). Such stock was subject to the restrictions on transferability imposed by SEC Rule 144. Such restrictions on transferability were restrictions which, by their terms, would lapse. As a result of such restrictions, on September 25, 1972, Mr. McDonald could not have sold the Centex stock he received upon the exercise of the options on the NYSE or on any other recognized stock exchange. However, at any time, he could have *596 pledged such stock. In addition, he could have sold such stock through a private sale, which is a sale not involving a public offering under section 4(2) of the Securities Act of 1933, as amended (15 U.S.C. sec. 77(d)(2) (1981)), subject to compliance with Federal securities laws and the restrictions on transferability as set forth on the face of the stock certificates. [2]
The parties have stipulated that the restrictions on transferability, resulting from the application of SEC Rule 144, reduced the fair market value of the stock purchased by Mr. McDonald on September 25, 1972, to $18.025 per share. On their return for 1972, the petitioners reported that they had exercised their options to purchase 11,000 shares of Centex stock for $61,750. They indicated on such return that the stock purchased by them was not registered and was subject to an investment representation. *597 They reported that the fair market value of such stock on September 25, 1972, was $198,275. Accordingly, they included $136,525 as an item of tax preference in their minimum tax computation for such year (fair market value $198,275 - cost $61,750). In his notice of deficiency, the Commissioner determined that the fair market value of the Centex stock on the date of exercise was $283,250. In making this determination, the Commissioner used the prices at which unrestricted shares of Centex were trading on the NYSE on September 25, 1972, and found that the mean price on that day was $25.75 per share. Accordingly, he determined that $221,500 should be included as an item of tax preference in the petitioners' minimum tax computation ($283,250 - $61,750). In making such determination, the Commissioner applied section 1.57-1(f)(3) of the Income Tax Regulations, which provides that the fair market value of a share of stock received pursuant to the exercise of a qualified stock option is to be determined without regard to restrictions (other than certain nonlapse restrictions) on the stock. The sole issue for decision is whether certain Federal securities law restrictions imposed on *598 the transfer of common stock received by an employee upon the exercise of a qualified stock option should be considered in determining the fair market value of the stock for purposes of the minimum tax computation. Such issue was thoroughly considered by this Court in Gresham v. Commissioner,79 T.C. 322 (1982), on appeal (10th Cir., Jan. 24, 1983), in which we held that section 1.57-1(f)(3), Income Tax Regs., was invalid and that the restrictions on the transferability of the stock had to be taken into consideration in determining its value at the time of acquiring it for purposes of the minimum tax computation.The facts of the present case are indistinguishable from those in Gresham. Therefore, our decision in Gresham is dispositive of the issue in the present case, and we hold that the restrictions on the transferability of the petitioner's stock must be taken into consideration in determining its value at the time he acquired it for purposes of the minimum tax computation. [3]
*599 Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1972, unless otherwise indicated.↩
2. In general, if restricted securities are to be sold in accordance with SEC Rule 144, it is necessary for such securities to have been fully paid for and beneficially owned for a period of at least 2 years prior to the sale. See 17 C.F.R. sec. 230.144(d) (1982)↩.
3. My views were fully set forth in my dissenting opinion in Gresham (79 T.C. at 334-339), and they have not changed. However, in accordance with the principle of stare decisis, this case must be decided in accordance with the holding of the majority in Gresham.↩